**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 4 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ESPERANZA J. ORTIZ; MARSHA
ARKO; SHIRLEY TRUJILLO,

     Plaintiffs-Appellants,

v.

THURMAN NANCE; SHARON
NANCE; UNITED STATES OF
AMERICA; TESS BURT,

     Defendants-Appellees.

No. 97-2187
(D.C. No. CIV-96-912-BB)
(District of New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, Circuit Judge, **HENRY**, Circuit Judge, and **McWILLIAMS**, Senior
Circuit Judge.

---

Before addressing the merits of this appeal, we should first address the

jurisdictional issue raised by the appellees in their motion to dismiss the appeal. In that

motion the appellees assert that, under Fed. R. App. P. ("FRAP") 4(a)(4), appellants'

notice of appeal was "ineffective" because, at the time the notice was filed, there was a

motion by the appellants pending in the district court to "Alter or Amend Judgment; For a

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

New Trial Date; For Relief from Judgment or Order; and For a New Amendment of Complaint Based on Newly Discovered Evidence."[1]  A bit of chronology is in order.

The district court entered its judgment on April 9, 1997.  On April 24, 1997, the appellants filed with the district court the aforesaid motion, which was based on Fed. R. Civ. P. 59(a) and (e), and 60(a) and (b).  That motion was filed more than ten days after judgment, and, as will be developed, the motion, both as concerns Rules 59 and 60, does not, in our view, trigger the proviso in FRAP 4(a)(4) that when a motion of the type referred to in FRAP 4(a)(4) is timely filed "the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding," and that a notice of appeal filed after entry of judgment but before disposition of such motion is "ineffective." Appellants filed their notice of appeal on June 6, 1997, which was within the 60 day period provided for in FRAP 4(a)(1) when the United States is, as here, a party to the action.  However, as indicated, on April 24, 1997, some 15 days (11 business days) after entry of judgment, appellants filed the motion above referred to, seeking relief from the judgment entered.  According to appellees' motion to dismiss the appeal, appellants' motion is still pending and undisposed of in the district court.  In such circumstances, according to appellees, the notice of appeal "has no effect" under FRAP 4(a)(4).  We disagree.

---

[1]In the district court the appellants in this court, i.e., Ortiz, and others, were plaintiffs, and the appellees in this court, i.e., Nance, and others, were defendants.

As indicated, appellants' motion in the district court was filed pursuant to Rule 59, i.e., new trial, and Rule 60, i.e., relief from judgment and order based, *inter alia,* on newly discovered evidence. Under Rule 59(b), a motion for new trial must be filed within ten days from the entry of judgment. However, under Rule 60(b), a motion based on newly discovered evidence shall be filed with a "reasonable time," but "not more than one year after the judgment, order, or proceeding was entered or taken." As indicated, appellants' motion filed pursuant to Rules 59 and 60 was not filed until 15 days after entry of judgment, which was beyond the ten day period provided for in Rule 59, but, on the other hand, the motion was filed well within the one year period provided for in Rule 60.[2] However, the fact that the Rule 60 motion was filed within one year of the judgment does not end our inquiry.

FRAP 4(a)(4) reads as follows:

> (4) <u>If any party files a timely motion</u> of a type specified immediately below, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. <u>This provision applies to a timely motion</u> under the Federal Rules of Civil Procedure:
>     (A) for judgment under Rule 50(b);
>     (B) to amend or make additional findings of fact under Rule 52(b), whether or not granting the motion would alter the judgment;
>     (C) to alter or amend the judgment under Rule 59;
>     (D) for attorney's fees under Rule 54 if a district court under Rule 58 extends the time for appeal;
>     (E) for a new trial under Rule 59; or

---

[2]We note that Rule 60(b) also provides that a motion "under this subdivision (b) does not affect the finality of a judgment nor suspend its operation."

> (F) for relief under Rule 60 <u>if the motion is filed no later than 10 days after the entry of judgment</u>. (Emphasis added.)

It is agreed that appellants' motion under Rule 59 was untimely and hence that part of the motion does not meet the test of FRAP 4(a)(4)(E), which requires a <u>timely</u> Rule 59 motion in order to delay the commencement of the time within which to file a notice of appeal until after disposition of the motion. Similarly, FRAP 4(a)(4)(F) requires that, in order for a motion under Rule 60 to extend the time within which to file a notice of appeal, it must also be filed within ten days from final judgment, which admittedly was not done in the instant case. Accordingly, appellants' motion based on Rules 59 and 60 was not timely filed as required by FRAP 4(a)(4), and hence the fact the motion is still pending in the district court does not foreclose the present appeal, the notice of appeal having been filed within sixty days from judgment. We have jurisdiction.[3]

The background facts out of which the present controversy arises are not in real dispute. The United States Post Office in Angel Fire, New Mexico, was not operated by the United States Postal Service ("USPS"), but, under a contract between the United States and Thurman and Sharon Nance ("the Nances"), was a "Contract Postal Unit" operated by the Nances as private individuals, and not as employees of the United States.

---

[3]After oral argument of this case, counsel for the appellants advised the court, and opposing counsel, by letter, that, after argument, he had written the district court asking that his motion, insofar as it was a Rule 59 motion, be denied as untimely, but that he did not wish to withdraw the motion, insofar as it was a Rule 60 motion based on newly discovered evidence, since "it was timely filed and served under Rule 60."

- 4 -

The Nances employed the three plaintiffs, Esperanza J. Ortiz, Marsha Arko and Shirley Trujillo, to work at the Angel Fire post office, Ortiz as its manager, and Arko and Trujillo as clerks. According to Ortiz' affidavit, the Nances took over the operation of the Angel Fire post office in May, 1995, succeeding one Thomas Hoover. Tess Burt had been hired by the United States to serve as Postmistress at the nearby Eagles Nest, New Mexico, post office. (The Angel Fire post office was apparently "administratively coordinated," to some degree, with the Eagles Nest post office.) The three plaintiffs were admittedly employees of the Nances, and, as such, were on the Nances' payroll. Thus, the three plaintiffs had no employment contract, express or implied, with the United States or the USPS.

In August, 1995, the Nances decided to terminate the employment of the three plaintiffs at the Angel Fire post office and instructed Burt to so inform the three of their termination. This Burt did and asked the plaintiffs to "turn in their keys." The plaintiffs then brought suit in a state court in New Mexico against the Nances and Burt, alleging, *inter alia,* breach of contract by the Nances, and tortious interference with a contract by Burt. The United States, believing that it was responsible for Burt's conduct, Burt being their employee, removed the case to the United States District Court for the District of New Mexico, where it substituted itself for Burt and moved to dismiss the complaint. The district court later dismissed the United States and Burt from the case and remanded the plaintiffs' state claims against the Nances to the state court.

Back in state court, the plaintiffs filed a First Amended Complaint, naming as defendants the Nances, the United States and Burt, reasserting the claims set forth in their original complaint and alleging a new claim against Burt based on an alleged deprivation of due process rights under color of federal law pursuant to *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). The state action was again removed to federal court where the United States and Burt again moved for dismissal or summary judgment.

On April 9, 1997, the district court granted the motion of the United States and Burt for summary judgment on all claims against them, which included the *Bivens* claim. Plaintiffs' claims against the Nances were again remanded to the state district court for resolution. The plaintiffs appeal the judgment thus entered, and, on appeal, the plaintiffs only challenge the district court's order dismissing their *Bivens* claim.[4]

As indicated, in this appeal plaintiffs only challenge the district court's judgment insofar as it concerned plaintiffs' *Bivens* claim.[5] As far as we can tell, plaintiffs' *Bivens* claim against Burt was first pled in plaintiffs' First Amended Complaint filed in state court after the initial remand by the federal district court. The gist of plaintiffs' *Bivens*

[4]In plaintiffs' brief, footnote 5 reads as follows: "The Employees appeal only the aspect of Judge Black's order granting the Government summary judgment with respect to the Employees' *Bivens* claim and accordingly remanding the remaining, state law claims to the state court."

[5]It is agreed that, by the very nature of the claim, the *Bivens* claim is against Burt only, not the United States.

claim against Burt is set forth in paragraph 54 of the First Amended Complaint and reads as follows:

> By the acts and conduct referred to in Paragraphs 21 through 25, 34 and 49 above, and by other acts and conduct, Defendant Burt, acting within the scope of her employment as an employee of the United States and under color of federal law, deprived Plaintiffs of their constitutionally cognizable property interests in their employment at the Angel Fire Post Office without affording Plaintiffs prior notice or the opportunity for a hearing, in violation of Plaintiffs' due process rights assured by Amendment V to the United States Constitution, with reference to Amendment XIV to the United States Constitution, and also in violation of Plaintiffs' due process rights assured by Article II, Section 18 of the New Mexico Constitution.

*Bivens,* of course, is at the heart of this case, and merits close consideration. Before so doing, we would note that, under the present record, there is no genuine dispute as to the following: (1) Plaintiffs were employees of the Nances, private parties who had entered into a contract with the United States to operate the post office at Angel Fire, New Mexico, and it is not claimed that the plaintiffs were somehow employees of the USPS; (2) the Nances, who were residents of Texas, decided to terminate their employment relationship with the plaintiffs and asked Burt, the postmistress at the nearby Eagles Nest post office, to so advise the plaintiffs, which she did. Based thereon, the plaintiffs allege that Burt violated their property interest in continued employment with the Nances by not affording them notice and an opportunity for a hearing before the Nances terminated their employment, and that by so doing Burt deprived them of their

- 7 -

Fifth Amendment right to "due process," all in violation of *Bivens.*  Now to *Bivens.*

In *Bivens,* agents of the Federal Bureau of Narcotics, acting under a claim of federal authority, allegedly entered Bivens' apartment and arrested him for narcotics violations, searched his apartment from "stem to stern," manacled him in front of his family and took him to a federal courthouse where he was interrogated, booked and subjected to a visual strip search.  Based thereon, Bivens brought suit in the United States District Court for the Eastern District of New York, against the six narcotics agents, alleging that the arrest and search were without a warrant and without probable cause, and violated the Fourth Amendment "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . ."  For such violation, Bivens sought money damages from the named agents.  The district court granted the agents' motion to dismiss on the ground, *inter alia,* that the complaint failed to state a federal cause of action.  276 F.Supp. 12 (E.D.N.Y. 1967).  The Second Circuit affirmed the district court on that ground.  409 F.2d 718 (2nd Cir. 1969).  On *certiorari*, the Supreme Court reversed, and held that violation of the command of the Fourth Amendment "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct."[6]  403 U.S. at 389.

We do not believe *Bivens* controls the present case.  The facts of *Bivens* are far

---

[6]*Bivens* involved a violation of the Fourth Amendment, but the same rule was applied by the Supreme Court in *Davis v. Passman,* 442 U.S. 228 (1979) where a violation of the "due process" claim in the Fifth Amendment was involved.  The claim in that case was based on employment termination because of gender.

- 8 -

different from the instant facts. Here, the plaintiffs were all the employees of the Nances, and, as indicated, their claims against the Nances have been remanded to the state court for resolution. True, at the behest of the Nances, who, as indicated, resided in Texas, Burt informed the plaintiffs of Nances' decision to terminate their employment. But to say that Burt should have afforded them notice and an opportunity to have a pre-termination hearing or be subject to a *Bivens* claim for a "due process" violation under the Fifth Amendment would be an unwarranted extension of *Bivens.*

We reject any suggestion that Burt somehow tortiously interfered with the plaintiffs' continued employment with the Nances and that such gives rise to a *Bivens* claim against Burt based on a "due process" violation. Even assuming that Burt tortiously interfered with the plaintiffs' continued employment with the Nances which might give rise to a state claim against Burt, plaintiffs cannot transmogrify such a claim into a *Bivens* claim based on a Fifth Amendment violation of their due process rights based on an alleged failure by Burt to give them notice of their impending termination by the Nances and an opportunity to be heard before termination. Such does not follow and would stretch *Bivens* too far.

Judgment affirmed.

ENTERED FOR THE COURT.

Robert H. McWilliams
Senior Circuit Judge